# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| Michael Barack, on behalf of himself and all others similarly situated | § § § | |
| Plaintiff, | § § | CA No.: 3:24-cv-264 |
| v. | § § § | Class Action Complaint |
| MTX Realty, LLC and James Baker | § § | Jury Demanded |
| Defendants. | § § | |

## PLAINTIFF MICHAEL BARACK'S CLASS ACTION COMPLAINT

### 1. STATEMENT OF FCC COMMISSIONER GEOFFREY STARKS – MARCH 2023

1.1. Texting is increasingly becoming Americans' preferred way to communicate. But unfortunately, as we've seen before, the more popular a communications service is, the more it's targeted by spammers and bad actors. The rise of robotexts – unwanted or illegal text messages – means a similar rise in harm to consumers, in the form of phishing attacks, malware, and scams. And robotexts are different than robocalls. Recipients of a robocall have the ability to either pick up the phone or not. But on most devices, recipients of a robotext see at least some of an unwanted message immediately, exposing them – and potentially luring them into – harm.

1.2. And you know as well as I do that we've been getting more of these unwanted texts. In 2022, Americans received over 225 billion robotexts – a 157 percent year-over-year increase, and a 307 percent increase from 2020. Last month, February 2023, 10.7 billion spam texts were reported – nearly 39 for every person in the United States. Given this growth, failure to act could lead to robotexting to become so pervasive that it negatively affects texting, just as robocalls have done for phone calls. I can confidently say that's the last thing we want.

## 2. Introduction

2.1. Michael Barack ("**Plaintiff**") on behalf of himself and all others similarly situated, brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("**TCPA**"), a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012). Plaintiff also alleges a state court cause of action.

2.2. Plaintiff's cellular residential telephone number is/was listed on the national Do Not Call Registry, a list explicitly designed to protect the public from intrusive telemarketing calls. MTX Realty, LLC (MTX Realty") texted Plaintiff's residential phone with a telemarketing solicitation, was

told to "stop" texting him and texted him again with another telemarketing solicitation.

2.3.  Because Plaintiff did not consent to receive these texts from Defendant, these texts violated the TCPA and the Do Not Call Registry laws and regulations.

## 3.  PARTIES

3.1.  Plaintiff is a resident of Grapevine, Texas.

3.2.  Defendant MTX Realty is a home real estate brokerage service serving the North Texas Metroplex. MTX Realty is an LLC with an address of 1631 Veneto Drive, Rockwall, Texas 75032.

3.3.  Defendant James Baker ("Baker") is the principal owner of MTX Realty. He can be served at 1631 Veneto Drive, Rockwall, Texas 75032.

## 4.  VENUE

4.1.  The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

4.2.  Venue is proper because MTX Realty has its principal office in this District and Defendant has sufficient contacts in this State and District to subject it to personal jurisdiction.

4.3. This Court has supplemental jurisdiction over the state law claim under 28 U.S.C. § 1367(a), because it is so closely related to the federal claim that they form a single case or controversy.

## 5. ARTICLE III STANDING

5.1. Plaintiff has Article III standing for his claim under the TCPA. *Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686 (5th Cir. 2021); *Jamison v. Esurance Ins. Servs., Inc.,* No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016).

5.2. Plaintiff was harmed by MTX Realty's actions of texting his residential phone while his number was on the Do Not Call Registry, without consent in the following manners:

5.2.1. Plaintiff's privacy was invaded by MTX Realty;

5.2.2. Plaintiff was harassed and abused by MTX Realty's texts;

5.2.3. MTX Realty's texts were a nuisance to Plaintiff;

5.2.4. Plaintiff's phone was unavailable for other use while processing the illegal texts from MTX Realty;

5.2.5. MTX Realty's illegally seized Plaintiff's telephone line while it made the illegal texts to Plaintiff's cellular telephone;

5.2.6. Plaintiff's telephone line was occupied by the unauthorized texts from MTX Realty;

5.2.7.    MTX Realty's seizure of Plaintiff's telephone lines was intrusive; and

5.2.8.    Plaintiff was inconvenienced by MTX Realty's texts, by among other things, having to check the nature of the text.

## 6.  The Law Regarding Robocalls

6.1. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.   In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

6.2. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

6.3. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B).   *See* 47 U.S.C. § 227(b)(3).

6.4. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations

implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

6.5. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012).

## 7. THE NATIONAL DO NOT CALL REGISTRY

7.1. The national Do Not Call Registry (the "Registry") allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. §

64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

7.2. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential and wireless telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

7.3. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

7.4. The Federal Communications Commission found that it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id.* at ¶ 24.

7.5. These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

7.6. Specifically, these regulations require a company to keep a written policy, available upon demand, for maintaining a do-not-call list, train personnel engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d) (1, 2, 3, 6).

7.7.  Accordingly, all telemarketing texts violate the TCPA, unless MTX Realty

can demonstrate that it has the required written do not call policy.

7.8.  There is a private right of action to enforce 47 C.F.R. § 64.1200(d) through

§ 227(c):

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company-specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

7.9.  These requirements are separate but cumulative.  In other words, a

company must comply with both the procedures for the company specific

do-not-call list *and* the procedures for complying with the national "do not

call" database regulations. A failure to comply with either is distinct a

violation of 47 U.S.C. § 227(c).

7.10.    Although some of these requirements mention "residential"

telephones, they were all extended to cover calls to cellular telephones as

well as residential telephones. 47 CFR § 64.1200(e); *Hunsinger v. Alpha*

*Cash Buyers, LLC*, No. 3:21-CV-1598-D, 2022 WL 562761, at *2–3 (N.D.

Tex. Feb. 24, 2022).

8. **Factual Allegations**

8.1. Plaintiff is the owner of and user of the residential cellular telephone number 817-657-4850.  Each of the texts referenced below were made to Plaintiff's residential telephone number 817-XXX-4850. 817-XXX-4850 is a cellular number/network.

8.2. Plaintiff uses the telephone number 817-XXX-4850 for residential purposes. It is not a business number.

8.3. Plaintiff's cellular telephone number 817-XXX-4850 is a personal cell phone that Plaintiff uses for personal, family and household use. Plaintiff maintains no landline phones at his residence and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose. Plaintiff's phone number 817-XXX-4850 is a residential phone.

8.4. Plaintiff registered the telephone number 817-XXX-4850 on the National Do Not Call Registry on December 4, 2009, and it has remained on the Registry since then.

8.5. On September 15, 2022, MTX Realty texted Plaintiff at his telephone number 817-XXX-4850. The caller ID showed the text was from 214-974-3319. The text solicited Plaintiff to use MTX Realty's real estate services.

    8.5.1. The text stated: "Hi! I just wanted to reach out and introduce myself. My name is Lacie w/ MTX Realty & I live in the area. Just curious if you considered selling your home if the price made sense to you? Lacie Radoncic MTX Realty."

8.6. Plaintiff replied "STOP" to the text and received a reply text stating "You have successfully been unsubscribed. You will not receive any more messages form this number."

8.7. On September 29, 2022, MTX Realty again texted Plaintiff at his telephone number 817-XXX-4850. The caller ID showed the call was from 214-628-7216. The text solicited Plaintiff to use MTX Realty's real estate services.

    8.7.1. The text stated: "Hi! I am sure you are probably still wondering what your home is worth in today's market. If you want, I do not mind running a CMA for you. Just let me know? Thanks! Lacie Radoncic MTX Realty."

8.8. Plaintiff was not a customer of MTX Realty and had not given MTX Realty his permission to text him.

8.9. The texts were for the purpose of encouraging the purchase or rental of, or

investment in, property, goods, or services. Specifically, Defendant was seeking to sell Plaintiff its real estate agent/broker services.

8.10.    The texts were placed without the Plaintiff's prior express written consent and were willful violations of the respective laws.

8.11.    All the texts were placed to a telephone number that Plaintiff had listed on the National Do Not Call Registry for more than 31 days prior to the texts.

8.12.    Plaintiffs telephone number was on the National Do Not Call Registry at the time he received the texts.

## 9. DIRECT LIABILITY

9.1. MTX Realty sent the text messages at issue to Plaintiff and members of the Classes using a software program managed by MTX Realty.

9.2. MTX Realty is responsible for all digital marketing campaigns, including text message marketing sent by its Realtors.

## 10. VICARIOUS LIABILITY

10.1.    Alternatively, to the extent MTX Realty is not directly liable for sending the text messages, MTX Realty is variously liable for the text messages at issue.

10.2.    **Actual Authority**

10.2.1.  The TCPA incorporates federal common law agency principles.

10.2.2. On May 9, 2013, the FCC held that sellers may not avoid liability by

outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment, limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In the Matter of the Joint Petition Filed by Dish Network, LLC, the United States of Am., & the States of California, Illinois. N. Carolina, & Ohio for Declaratory Ruling Concerning the Tel. Consumer Prot. Act (TCPA) Rules*, 28 F.C.C. Rcd. 6574, 6588 (F.C.C. 2013) ("*Dish Network*").

10.2.3. Defendant MTX Realty signed contracts with Realtors, expressly

authorizing and directing them to promote MTX Realty's services via

MTX Realty's "step-by-step" marketing plan which included sending

text messages.

10.2.4. MTX Realty authorized its Realtors to use MTX Realty's tradenames and to direct consumers to enter into an agreement with MTX Realty pertaining to their services.

10.2.5. MTX Realty provide the Realtors with the telephone numbers of potential customers to be texted.

10.2.6. MTX Realty was the beneficiary of any transaction resulting from a transaction made because of the text messages.

10.2.7. The text messages were used to market MTX Realty's services.

10.2.8. MTX Realty supervised and trained the Realtors.

10.2.9. Defendant accepted, did not object to, and benefitted from the Realtors' violations of the TCPA.

10.3.    **Apparent Authority**

10.3.1. *Dish Network* further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the [third party] access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It

> may also be persuasive that the seller approved,
> wrote or reviewed the outside entity's telemarketing
> scripts. Finally, a seller would be responsible under
> the TCPA for the unauthorized conduct of a third-
> party telemarketer that is otherwise authorized to
> market on the seller's behalf if the seller knew (or
> reasonably should have known) that the telemarketer
> was violating the TCPA on the seller's behalf and the
> seller failed to take effective steps within its power to
> force the telemarketer to cease that conduct.

28 FCC Rcd. at 6592 (¶ 46).

10.3.2. The use of MTX Realty's name with the text messages used by the Realtors makes it appear that MTX Realty and the Relators are acting together as the same company.

10.3.3. MTX Realty allowed the Relators to use its name in an effort to market MTX Realty's services.

**10.4.    "On Behalf Of" Liability**

10.4.1. Section 227(c)(5) of the TCPA specifies that a person who has received more than one telephone call within any 12-month period "by or on behalf of the same entity" in violation of the regulations promulgated by the Federal Communications Commission may bring an action based on such violation to enjoin further calls or recover damages.

10.4.2. MTX Realty hired Realtors and trained them to send the text messages on MTX Realty's behalf. Per MTX Realty's instructions, the Realtors sent text messages in violation of the FCC's regulations under 47 C.F.R. § 64.1200(c) to Plaintiff and the Class Members on behalf of MTX Realty.

## 11. Facts Pertaining to MTX Realty.

11.1. MTX Realty is a real estate company servicing the D/FW metroplex.

11.2.    The MTX Realty's network provides access to luxury real estate and homes for sale throughout the Dallas-Fort Worth Area. Its website displays local listings, with a large inventory of luxury homes.

11.3. MTX Realty contracts with real estate agents ("Realtors") to act as its agent representing buyers and sellers of residential homes.

11.4.    MTX Realty charges the Realtors a fee to be associated with MTX Realty.

11.5. When a Realtor closes a transaction, MTX Realty receives the entire broker's commission from the transaction and pays a portion of that commission to the Realtor. Thus, the Realtor is closing the transaction in the name of MTX Realty

11.6.    MTX Realty, like many real estate brokers, is the classic pyramid structure. The more Realtors MTX Realty has working for it, the more fees

and commissions it receives.

11.7. MTX Realty empowers its Realtors to act on its behalf. In fact, the texts sent in this case show as coming from "Lacie Radoncic MTX Realty."

11.8. Lacie Radoncic ("Radoncic") is a Realtor that MTX Realty contracted with to represent MTX Realty.

11.9. MTX Realty, through its training and coaching programs, provides a marketing plan to Realtors affiliated with MTX Realty that involves unsolicited telemarketing.

11.10. In Plaintiff's case, MTX Realty's marketing plan resulted in the Plaintiff receiving multiple unwanted texts to his personal cellular phone that is registered on the Do Not Call Registry. Plaintiff did not give any prior express consent to receive these calls from MTX Realty.

11.11. MTX Realty promotes, trains, and directs its Realtors to place cold calls/texts to phone numbers of consumers, including phone numbers registered on the Do Not Call Registry and including consumers who have never given their consent to MTX Realty and/or its Realtors.

11.12. MTX Realty provides its Realtors "step by step, plug and play training" that results in calls/texts to phone numbers of consumers, including phone numbers registered on the Do Not Call Registry and including consumers who have never given their consent to MTX Realty

and/or its Realtors.

11.13.    MTX Realty provided Radoncic with access to a marketing platform (Inside Real Estate or "InsideRE") that was used in sending the texts at issue in this case.

11.14.    MTX Realty provided Radoncic with access to the North Texas Real Estate Information Services system which allowed MTX Realty and Radoncic to acquire Plaintiff's contact information.

11.15.    MTX Realty also provides its Realtors, such as Radoncic, with other marketing tools.

11.16.    MTX Realty provides an internal MTX Realty system to which Realtors can upload telephone numbers to be contacted through one of MTX Realty's contracted with software providers.

11.17.    MTX Realty allegedly performs the list scrubbing to make sure no numbers on the Do Not Call list are contacted.

11.18.    MTX Realty then allows the Realtors to send text messages through the KV Core portal system, a system to which MTX Realty subscribes.

11.19.    MTX Realty subscribes and purchases licenses to these various software tools and allows its Realtors to use the services.

11.20.    The Realtors send texts on behalf of MTX Realty.

11.21.    The Realtors hired by MTX Realty are contractually required "to

use his/her best efforts to solicit listings and prospects for Broker's [MTX

Realty} real estate business."

11.22.    During all of these processes the Realtors, such as Radoncic, are

acting as agents for MTX Realty.

11.23.     The texts at issue in this case were sent at the direction of MTX

Realty.

## 12. Facts Pertaining to Baker.

12.1.    Baker is the principal owner of MTX Realty.

12.2.    Baker oversees all of the operations of MTX Realty.

12.3.    Baker solicits Realtors to act as agents for MTX Realty.

12.4.    Bakers tells Realtors that through MTX Realty, the Realtors have

access to a "sales tool" that will launch their business.

12.5.    Baker tells Realtors that "our business is your business, setting up

the automation, the campaigns, the additional marketing, the lead targeting

…"

12.6.    Bakers tells Realtors that MTX Realty has a "step by step, plug and

play training that allows you to get off and running and close 2-3 homes in

your first month working with us."

12.7.    Baker promises the Realtors that he and MTX Realty will give the

Realtors access to marketing campaigns.

12.8.    MTX Realty subscribes to a marketing platform (Inside Real Estate or "InsideRE") that was used in sending the texts at issue in this case.

12.9.    Baker signed for and approved the subscription to InsideRE software services.

12.10.    Baker arranged for the Plaintiff's and Class Members contact information to be acquired through the North Texas Real Estate Information Services system.

12.11.    Baker personally purchased the MTX Realty phone number reference and scrubbing system allegedly to be used by MTX Realty Realtors like Lacie Radoncic.

12.12.    Baker designed, approved and implemented the marketing campaign that resulted in the texts to Plaintiff and the Class Members.

12.13.    Baker participated in the illegal telemarketing by personally designing the calling/marketing campaigns, approving the calling/marketing campaigns, participating in the calling/marketing campaigns and directing the activities of the individuals that made the texts.

12.14.    Thus, at all times relevant hereto, Baker, acting in concert with Defendant MTX Realty, has formulated, directed, controlled, had the

authority to control, or otherwise participated in the acts and practices set forth in this Complaint.

12.15.    Individuals acting on behalf of a corporation may be held personally liable for violations of the TCPA if they "had direct, personal participation in or personally authorized the conduct found to have violated the statute." *Texas v. Am. Blastfax, Inc.,* 164 F.Supp.2d 892, 898 (W.D.Tex. 2001)("[A]n officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and wilfully) violate the TCPA should not escape liability solely because they are corporate officers.").

12.16.    A number of other federal district courts have concluded that individuals acting on behalf of a corporation may be held personally liable under the TCPA when they directly participated in, or personally authorized, the violative conduct. *See City Select Auto Sales Inc. v. David Randall Assocs., Inc.*, 885 F.3d 154, 161 (3rd Cir. 2018)*; Bais Yaakov of Spring Valley v. Graduation Source, LLC*, No. 14-CV-3232 (NSR), 2016 WL 1271693, at *5 (S.D.N.Y. Mar. 29, 2016); *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 1333472, at *3 (N.D.

Ohio Mar. 28, 2014); *Maryland v. Universal Elections,* 787 F. Supp. 2d 408, 416 (D.Md. 2011)(reasoning that "if an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force"); *Baltimore-Washington Tel. Co. v. Hot Leads Co., LLC*, 584 F. Supp. 2d 736, 745 (D. Md. 2008).

### 13. CLASS ACTION ALLEGATIONS

13.1. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a class of all other persons or entities similarly situated throughout the United States.

13.2.       The "DNC Class." The class of persons Plaintiff proposes to represent with respect to Count Two is tentatively defined as all persons within the United States whose phone numbers were registered on the Do Not Call Registry for more than 31 days prior to receiving calls from, or on behalf of, MTX Realty, and who, since February 2, 2020, received more than one telemarketing text on their residential cellular line within any twelve-month period from, or on behalf of, MTX Realty. The Class excludes anyone who received the texts on their business cellular line.

13.3.       The "Policy Class." The class of persons Plaintiff proposes to represent with respect to Count Three is tentatively defined as all persons within the United States to whose telephone number MTX Realty placed

(or had placed on its behalf) two or more telemarketing texts in a 12-month period after February 2, 2020. The Class excludes anyone who received the texts on their business cellular line.

13.4.    The "Texas Class." The class of persons Plaintiff proposes to represent with respect to Count Four is tentatively defined as all persons in the state of Texas to whom after February 2, 2020 MTX Realty sent a text in violation of 47 U.S.C. § 227 or a regulation adopted under that provision.

13.5.    The classes as defined above are identifiable through phone records and phone number databases.

13.6.    Plaintiff does not know the exact number of members in the proposed classes, but reasonably believes based on the scale of MTX Realty's business, and the number of texts that he received, that the classes are so numerous that individual joinder would be impracticable. On information and belief, the potential class members number at least in the hundreds or thousands.

13.7.    Plaintiff and all members of the proposed classes have been harmed by the acts of Defendant in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that

necessarily accompanies the receipt of unsolicited and harassing texts, and violations of their statutory rights.

13.8.       Plaintiff is a member of the classes.

13.9.       There are questions of law and fact common to Plaintiff and to the proposed classes, including but not limited to the following:

13.9.1. Whether MTX Realty or its agents violated the TCPA by engaging in advertising by unsolicited telemarketing calls/texts;

13.9.2. Whether MTX Realty or its agents, within the four years before the filing of the initial Complaint, made more than one telemarketing text within any twelve-month period to individuals whose telephone number had been registered on the Do Not Call Registry for more than 31 days after being told to stop texting them.

13.9.3. Whether the Plaintiff and the class members are entitled to statutory damages as a result of Defendant's actions.

13.10.      Plaintiff's claims are typical of the claims of class members.

13.11.      Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

13.12.    The actions of Defendants are generally applicable to the class as a whole and to Plaintiff.

13.13.    Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

13.14.    The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

13.15.    Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## 14. Count One: Violation of the Do Not Call provisions on behalf of Plaintiff and the DNC Class.

14.1.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

14.2.    Defendants violated the TCPA by initiating more than one telephone solicitation in a twelve-month period to persons and entities whose telephone numbers were listed on the Do Not Call Registry and who

had not consented to receive the texts. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

14.3.    Defendants' violations were negligent or knowing/willful.

14.4.    Relief Sought: For himself and all class members, Plaintiff requests the following relief:

14.4.1. That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

14.4.2. That Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

14.4.3. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

14.4.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

14.4.5. That the Plaintiff recover his attorneys' fees and costs.

14.4.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**15. Count Two: Violation of the TCPA's Regulations on behalf of Plaintiff and the Policy Class.**

15.1. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

15.2.    Defendants violated the TCPA by initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry when Defendants did not have a compliant Do Not Call policy. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(2).

15.3.    Defendants also violated the TCPA by initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry when Defendants did not include a telephone number or address at which the person or entity may be contacted. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(4).

15.4.    Defendants' violations were negligent or knowing/willful.

15.5.    Relief Sought: For himself and all class members, Plaintiff requests the following relief:

15.5.1.  That Defendants be restrained from engaging in future telemarketing in violation of the TCPA.

15.5.2. That Defendants, and their agents, or anyone acting on its behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

15.5.3. That the Court certify the claims of the named Plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

15.5.4. That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

15.5.5. That the Plaintiff recover his attorneys' fees and costs.

15.5.6. That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

## 16. Count Three: Violation of Tex. Bus. & Com. Code, Chapter 305 ("TBCC") on behalf of Plaintiff and the Texas Class.

16.1.    Plaintiff incorporates by reference all of the above paragraphs as though fully stated herein.

16.2.    Plaintiff is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

16.3.     MTX Realty is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

16.4.     Baker is a "person" as defined by Texas Business & Commerce Code § 1-201(b)(27).

16.5.     Pursuant to Section 305-053(a) of the Texas Business & Commerce Code, a person who receives a communication that violates 47 U.S.C. § 227, or a regulation adopted under that provision, may bring an action against the person who originates the communication for an injunction, damages or both an injunction and damages.

16.6.     As set forth above Defendants violated 47 U.S.C. § 227, or a regulation adopted under that provision.

16.7.     Plaintiff is entitled to a permanent injunction to prevent any further violations of the Texas Business & Commerce Code, Chapter 305.

16.8.     Pursuant to Section 305-053(b) of the Texas Business & Commerce Code, Plaintiff is entitled to the greater of $500.00 for each violation or Plaintiff's actual damages for each call negligently made by Defendants.

16.9.     Pursuant to Section 305-053(c) of the Texas Business & Commerce Code, Plaintiff is entitled to not more than the greater of $1,500.00 for each violation or three times Plaintiff's actual damages for each violation by Defendant that the Court finds was made knowingly or intentionally.

17. **Relief Sought:** For himself and all class members, Plaintiff requests the following relief:

    17.1.1.  That Defendants be restrained from engaging in future telemarketing in violation of the TCPA or the TBCC.

    17.1.2.  That Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

    17.1.3.  That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel be named as counsel for the classes.

    17.1.4.  That the Plaintiff and all class members be awarded statutory damages of $500 for each violation, with triple damages for any willful or knowing violation, as provided by the law.

    17.1.5.  That the Plaintiff recover his attorneys' fees and costs.

    17.1.6.  That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances

18. **Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted:

By:    */s/ Chris R. Miltenberger*
       Chris R. Miltenberger
       Texas State Bar Number 14171200

   **Designated as Lead Attorney**

**The Law Office of Chris R. Miltenberger, PLLC**

1360 N. White Chapel, Suite 200
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com

Attorneys for Plaintiff